Number 181415, Carmen Rodriguez-Cardi v. MMM Holdings, Inc. Good morning. Be pleased to court. My name is Juan David Adias. I'm counsel for the plaintiff's appeal. And in this case, I would like to reserve two minutes for rebuttal, if I may. Yes. Thank you. In this case, the district court dismissed our discrimination case. We are here to challenge that decision based on the case law that we cited in our brief. And also, in new authorities that came out after we filed our brief, the case of Martina Rivera v. Medina and Medina, where Judge Howard was Chief Justice on that case also. I'm going to give you a brief summary of the facts for the case. My client at the moment of the issue here was a 48-year-old woman married to a disabled husband, mother of two. He was hired to work for MMM, which is a health, they sell health insurance under the Medicare segment, okay? All of her colleagues in her area were two generations younger than her, mid-20s, low-20s. From the beginning that she started working for MMM, she became subject of derogatory and offensive comments that created in order to ridicule him regarding her age, exclusively regarding her age, like she was called la vieja. Does the record show whether the auditor who did the compliance investigation and made the recommendation for termination knew about these comments, or whether the human resources director, who I take it is the person that made the final decision on termination, knew about the existence of those comments? Oh, she complained. My client complained about the comments. So let's stay just with the question that I asked. I want to know whether either of those two people that I identified, does the record show whether they were aware of this? When my client was interviewed by the investigator, she did tell her about the situation. The record shows that? Yes, sir. Okay. Where does the record show that? I have to look into the appendix, but if I can write a letter to you. That's an unfair question at this point. I'll find it. Okay, sir. Thank you. The comments were all regarding her age. They're all in my brief. But when she complained, let me say something. Her supervisor was part of it. I thought the district court concluded that what was complained of were comments, but not necessarily she didn't make clear that the comments were about her age, derogatory comments about age. Is that wrong? That's what the district court decided, and we challenged that at the summary judgment. So in your view, when she made her complaint about the comments that she had been receiving, to whom? To the auditor and to the? To her supervisor, which was Roberto Rodriguez. That's not the human resources? No, it's not human resources. Who was the person who made the decision to terminate? Was that the human resource officer? It was the human resources. That's not Rodriguez? That's not Rodriguez. Rodriguez worked for them. I mean, he was supposed to relay the complaint to the human resources department. So there's no evidence in the record that he relayed it? No, he just laughed at her when she complained. So that means the human resource official who made the decision to terminate, there's no evidence that that official knew of the derogatory comment? Yes, in the exit, when she was interviewed by human resources. I'm sorry, I don't understand the yes. Does the yes mean that yes, he knew it, or yes, it was not made? I'm sorry, go again. Did the human resources person who made the decision to fire her know about the derogatory comments regarding her age? Before she was terminated? Yes. Yes. How did the human resource manager come to know that? Because she was interviewed by her. It was an interview conducted by the human resources manager, the one that was IDO's. Of your client? Yes. And your client told the human resources manager they've made derogatory comments about my age to me? Yes. Okay. So she was also treated differently from the other colleagues in there. She was given the worst cases. She was given the farthest cases from the office. She was removed from the client's list, only to her, not to the other ones. She was not invited to reunions or meetings, not necessarily regarding work-related, but, you know, the group-related, including her supervisor also. So she was terminated a few months after she was there. She worked there for 10 months. She was terminated. And in the exit interview, the only reason given to her was this investigation. And we challenged at the summary judgment stage, we challenged the investigation, because the conclusion of the investigation was that she made an unsolicited contact with a potential client. And this never happened. If you take a look at page 947 of the appendix, you will see there there was no such approach. The person that approached my client was the potential client, not her approaching. So we challenged the decision. We challenged the performance issue. And according to the standard and the case that I mentioned that Judge Howard was part of it, I'm going to read just a sentence out of it that says that, where a worker being continuously harassed, as my client was, is able to provide information about the type of harassment which she did, including specific words, actions, and incidents directed at her, as well as the individuals, which my client identified two individuals plus her supervisor. Such claims should generally be sustainable, provided employee can tie her mistreatment to her membership to a protected class. All of the comments, all of this mistreatment, all of the harassment was based solely on her age. And under that case, we should have survived the summary judgment and set it to the jury. Is that on your hostile work environment claim? Yes, sir. What about the termination claim? Well, termination, we challenged both reasons for termination. Yeah. And first, the performance issue is admitted. If you look at page 1193 of the appendix, the supervisor admitted no one was performing. So why fire my client because of that, only my client? Because there were other terminations after we began with this litigation. This is what the courts I have here said about this area. The court noted that Rodriguez did not contest the performance problem of which she was aware. Moreover, the court adds, Rodriguez provided no evidence that other similarly situated employees were treated more favorably than she was. Well, this is what I told you. She was treated the worst than the other ones. She was given the worst cases. She was being sabotaged. I'm only saying what the court said. I know the court said that. The court said that you didn't provide any evidence of that. It isn't. This is why we're here, Your Honor. This is exactly why we're here, because we challenged that, telling the court that she was treated differently from others. She was being sabotaged, giving the worst cases, removing her from the list, removing providers. And we admitted that she was underperforming because of this. But that's the hostile work environment claim. For the termination claim, is there any evidence of similarly situated people to her not being terminated? Yes. Well, she was the only one terminated at the time. As I told you, there were some terminations after we began with litigation. But that's what the district court said. You didn't put forward any evidence of other people similarly situated to her not being fired. No one else was fired, but you have to show that they're similarly situated to her. So did you put forward evidence of other people with the exact same performance record not being fired? Well, yes. What I told you, when the supervisor admits that no one was performing, no one was making the numbers, this is at page one. But she had certain scores on her performance. Did you put forward evidence of the scores of other people? No. The answer is no. Okay. Thank you. May it please the Court. Good morning. My name is Catherine Gonzalez, together with Patricia Marvez. I represent Apelli MMM Healthcare Holdings. This morning, Your Honors, the legitimate business reasons that were non-discriminatory, that supported the termination of Carmen Rodriguez, remain on solid grounds. We can summarize the attempt by Rodriguez to establish the pretext in this case, which is the focus of the appeal, in six points. Six theories that, at the end of the day, do not support a finding of pretext. And in essence, the employer, in this case, had good faith belief that the reasons for terminating her employment were true, the reasons were consistent and unchanged. Rodriguez, in fact, was treated the same way as similarly situated employees, and there is broad evidence on the record, including her own admissions, to support that conclusion. The totality of the circumstances, as they were evaluated by the lower court, do not show and cannot support a finding of hostile work environment whatsoever. And in this case, it's very important to consider the inference of no discrimination on the basis of age that results from the same actor rule that can be applicable to this case. First, I have to focus, and I'm going to change a little bit my order, but Your Honors asked a couple of questions about whether or not Plaintiff and Rodriguez was treated similarly as to other employees. And there's plenty of information and evidence on the record that indicates that Rodriguez herself admitted under oath that she was treated the same way. For example, she mentioned that when coworkers in her same position as sales, as outside sales representative, were showing low numbers in their sales, they were warned and they received written warnings for the low sales and for not achieving the goals of the sales department. She also admitted that the same way that she was placed in a performance plan and a final performance plan, that other coworkers that were similarly situated were also faced with the same performance plans. She also admitted under oath that many of the coworkers included in their HR records, in their human resources personal files, that they had similar warnings as the ones that she received. And at the end of the day, other employees that did not reach the sales quotas were also terminated. The plan, the health plan, the employer was able to bring forth two employees that were also terminated that were under the ages of 40, a lot younger than her, and were terminated for the same reason that she was ultimately terminated, which was the gross misconduct because she conducted an unsolicited contact to a beneficiary. And that was the ultimate reason for the termination. If I understand it right, the unsolicited contact arose because of the follow-up when she comes the second time? No, Your Honor. The unsolicited contact is something totally separate. In fact, the auditor who investigated the unsolicited contact doesn't have anything to do with HR. So I'm just trying to figure out what the facts are about the contact itself. She meets some person. She meets the beneficiary. And when she meets the beneficiary, she changes the plan to a higher level of service in the plan. The unsolicited contact arises afterward, around months after. I'm sorry, the complaint arises afterward when that same beneficiary contacts 1-800-Medicare. It's a portion of CMS, the Centers for Medicare Advantages, that manage and administer Medicare. But what is the actual, what is the moment where she's doing something wrong, where the employee is doing something wrong? The straw that brought the camels back is when she contacted the beneficiary, went to her home, knocked on her door without having authorization before she did the contact. Excuse me. Your opponent, I understood, claims that they contest that. That they say that didn't happen or something like that. They do, Your Honor. Well, doesn't that put that in issue? No. So you can't have summary judgment? No, Your Honor. Based on plaintiff's own admissions, there is a key admission in the record that she states that she did not receive a contact directly from the beneficiary after the one time that she had met with her with another beneficiary in another presentation. And that is a key element in her admissions. In addition to that, the documents that the auditor had in front of her when she was evaluating the unsolicited contact, they all indicated and convinced her, the auditor representative of the employer, that the contact was improper, that there was a violation of regulatory policy and company policy and federal policy. So the business judgment at the time is something that has to be respected. That was the finding that the auditor had. And I must stress, Your Honors, that the auditor, again, doesn't have anything to do with HR. There's nothing in the record that suggests or shows that she received any information from plaintiff. Her contention, though, is I thought that she made that follow-up contact because she had effectively been invited to do so by the person she contacted, right? And then the auditor, the human research person, does the investigation conclude that's not true, right? The auditor had a set of facts in front of her at the time of the investigation that showed otherwise. I'm sorry. Just to finish the thought, I guess I'm not sure what you're supposed to do in summary judgment if it's a 5149. You could read these facts the way the auditor read them. You could read the facts the way the auditor didn't read them. Auditor read them one way, okay? But couldn't a jury conclude that maybe the auditor read them that way because of her age? No, Your Honor. So that's what I'm having trouble with. There's no evidence on the record that the auditor had any knowledge of her age, and there's no evidence on the record. What about the comments? No, Your Honor. There's no evidence whatsoever. You can look through the entire record. There's no evidence that the auditor received any information about the comments. In fact, plaintiff's admissions under oath are that she did not complain about age to anybody in writing verbally, and that the only comment that she made to her supervisor, which was not the HR director, was that she felt uncomfortable about certain comments. She never mentions, and there's no evidence on the record of the alleged age's comments. And there's no evidence that the auditor would have known her age was 48? No, nothing on the record demonstrates that, Your Honor. And again, going back to the incident, there is document on the record, including documents that were presented to the auditor that were issued and prepared by plaintiff that states that the contact was a contact in the house, that the plaintiff, that Rodriguez, went to the house before Rodriguez did that. She had to have the written authorization. And the investigation was based on Rodriguez's interview, an interview to Rodriguez, an interview to the beneficiary, and the documents that Rodriguez herself prepared, which indicated by Rodriguez that her intention was to go to the beneficiary's house and get the authorization then and there. So, Your Honor, based on the business judgment, that business judgment cannot be substituted, based on case law by this circuit, cannot be substituted by the judgment of the employee or with all due respect by the judgment of the court, Your Honors, because again, as it has been mentioned so many times, the courts cannot sit as super-personnel departments. In terms of the totality of the circumstances analysis, the lower court conducted the proper analysis of the circumstances. And we have to look carefully at plaintiff's own admissions and the uncontested facts, which most of them are uncontested in this case. Most of them are admitted by Rodriguez. The comments were comments in passing. The comments have to do with her hair. The comments have to do with her coat. The comments have to do with her old car and a phone that had 12 years. She admitted that her car was old. She admitted that her phone was old. And the comments were to the effect, based on her allegations, were to the effect that the phone did not have Internet access. And these comments, based on the record, are only attributable to some of her co-workers. But she's unable to establish any specific dates when the comments were made, any frequency when the comments were made. And she admits under oath that she did not report those comments in particular, not even to her supervisor. And the company did have in place the proper channels to report this type of comments and this type of content.  The same person who hired her was her supervisor, which was younger than her. He was the one who paid for her insurance company license. He was the one who brought her in. And he was the one who supervised her the entire time and had to impose corrective action due to her performance problems. Yes. Oh, and I'm sorry, I don't have more time. Okay. Juan Davila for the record again. I'm going to address Judge Barron's questions regarding the contact. This is something they know how it happened. It's no house. This is a building, a multi-story building, an elderly home with a lobby on the first floor. This is a place where my client can go and do advertising. This is admitted by the company that this is a marketing place. So my client used to go there on a monthly basis to lead propaganda. And every time she goes in there, people approach us and ask questions. And if you go to page 947 of the appendix, they have this information. It was provided to us by them. It says that the client again requested information of the MMM. It doesn't say that my client went to her house, knocked on her door, and went there to get anything. It says that the client approached her. It's in there. It's in there. Regarding the good faith belief of the employer, I believe that the good faith belief, this mental exercise that the employer has, it needs to be evaluated by a jury because none of us know if this really was a good faith belief or not. We don't know that. When I interviewed that person in a deposition, I saw her demeanor. I know that if the jury take a look at her, when she will be in her testimony, they will find out otherwise. This good faith belief that the reason was legit, I think it should be left for the jury to decide. Like this old school professor used to say, Mr. Paul Tobias, which is the founder of the National Employment Lawyers Association, if there is no good explanation, there is discrimination. And this is what happens in this case. No good explanation. Thank you.